## Case No. 10,186.
### NEWPORT & C. BRIDGE CO. v. UNITED STATES.

[3 Am. Law Rec. 19.]

Circuit Court, S. D. Ohio. 1874.[1]

CLAIMS AGAINST THE UNITED STATES — LIABILITY FOR COMPELLING CHANGES IN BRIDGES.

[1. By act of March 3, 1869 (15 Stat. 347), congress authorized the Newport & Cincinnati Bridge Company to construct a bridge across the Ohio river on certain conditions as to length and height of spans, etc. While the bridge was in course of construction, congress, by the act of March 3, 1871 (16 Stat. 572), materially changed these conditions, but authorized the company to sue the United States for the purpose of determining the question of any liability on its part in consequence of such changes, and directed the court, in case it found a liability to exist, to ascertain the amount and necessary cost and expenditures "reasonably required to be incurred in making the changes" directed. Held, that this gave no right to recover the amount of damages for which the company became liable by reason of the breach of a contract with a third party for furnishing stones, which breach was a necessary result of the change in the plans.]

[2. Quaere: Whether the original act prescribing the conditions upon which the bridge might be built was in effect a contract between the United States and the bridge company, so that an arbitrary change in the conditions prescribed would render the United States liable in any sum whatever.]

This was a bill in equity filed under authority given by the act of congress of March 3, 1871, upon the following case: By joint resolution of congress of March 3, 1869, the consent of congress was given to the erection of a bridge by plaintiffs across the Ohio river, between Newport and Cincinnati, upon condition that its span over the main channel should be not less than four hundred feet long, from pier to pier, and in all other respects according to the conditions and limitations of the act of July 14, 1862 [12 Stat. 569], to establish post roads, regulating bridges across the Ohio river above the mouth of the Big Sandy river, but reserving the right to withdraw the assent thereby given in case the free navigation of the river should at any time be substantially and materially obstructed by the bridge to be erected under the authority of that resolution, or to direct the necessary modifications and alterations of it.

The plaintiffs proceeded to erect their bridge upon the plan of a draw-bridge, seventy feet high above low-water mark, and progressed therein during the years 1869 and 1870, until they built all the piers to nearly the height contemplated by their span; had in the main completed their approaches and placed their iron superstructures upon some of the shore spans, but not over the main channel. The

work was suspended by the act of March 3, 1871 (16 Stat. 572, 573), which made it unlawful to proceed in the erection of the bridge unless the bridge should be so constructed that the channel span of the bridge should have under it a clear headway at low water of one hundred feet below any point of the span; dispensed with a draw, and required all other spans over the·river at low water to have a clear headway of not less than seventy feet above low-water mark. The act further provided that after the bridge should have been completed according to its requirements, that it should be lawful for the company to file its bill in equity against the United States in the circuit court of the United States for the Southern district of Ohio, and full jurisdiction was conferred upon that court to determine—First, whether the bridge according to the plans on which it has progressed at the passage of this act has been constructed so as substantially to comply with the provisions of law relating thereto; second, the liability of the United States, if any there be, to the said company, by reason of the changes by this act required to be made. And if° it shall determine that the United States is so liable, and that said bridge was so being built by them, the said court shall further ascertain and determine the amount and necessary cost and expenditures reasonably required to be incurred in making the changes required in said bridge and its approaches. The act further gave the right of appeal to either party to the supreme court, but provided that no money should be paid until the supreme court should render final decree in favor of the company. The plaintiffs made the changes and completed the bridge according to the requirements of the act, and in their bill allege that they expended in making such changes, including interest claimed, the sum of $350,791.95. The bill further alleges that the company has become liable to G. A. Smith & Co. for breach of contract with them for stone work, by reason of the changes required, which is claimed to be $206,658.53.

The bill prayed for a decree against the United States for the amount actually expended, and for such damages as might be found due to G. A. Smith & Co. To this bill the district attorney filed a general demurrer, and also a special demurrer to the damages claimed by Smith & Co.

Judge Johnston opened the argument for the United States, making the following points: First. Passing by for the present the reserved right of congress to withdraw their assent or modify the bridge, the bill presents the very common case of parties who have suffered loss and inconvenience as a necessary consequence of the progress of public improvements—with this shade of difference, that these sufferers had an alternative by which, if they had been wise, they would have avoided both loss and inconvenience.

None of their private property was taken for the public use. None of their property suffered physical damages at the hands of the United States; and we maintain, both on principle and authority, that they have no claim to relief. Second. By the reserved right of congress to withdraw their assent or modify the bridge. the complainants were put fairly on the lookout for their own safety. The reservation was a part of the charter under which they built; and the right of congress to withdraw was as fully secured by the charter as the right of the complainants to build. They incurred the loss and inconvenience, whatever it was, with their eyes open, and have no right to complain. Third. The right to withdraw the assent of congress or modify the bridge was a legislative right, inherent in congress, by their power to regulate commerce, and was secured to them by the terms of the charter; and no judical determination was required, prior to the change. Fourth. The act of March 3, 1871, confers no rights on these complainants which they did not possess without it. It simply opens the doors of this court and lets them in, to show, if they can, that they have rights arising out of the acts of congress in the premises.

Judge Stanley Matthews, in behalf of the company, claimed that the demurrer raised three questions: First, the jurisdiction of the court; second, the lawfulness of·the original bridge; third, the liability of the government.

As to the jurisdiction, he claimed that, as to the persons and subject-matter, the act of congress was expressed, and its power to confer it undoubted. That no objection could be made on the ground that the questions involved were political, and not judicial, or on the ground that no rule of decision was prescribed, because the authority to bring the suit was a conclusive admission by the government that the question of its liability was properly a judicial one, and that the court was authorized to decide on it, on the principles of equity.

As to the lawfulness of the bridge as originally proposed, that was admitted by the demurrer, and was not argued.

As to the liability of the United States, it was contended: First. That the resolution March 3, 1869, giving the assent of the United States to the construction of the original bridge, acted on by the company, became an executed contract, under which a right of property became vested, being the franchise and right to build and use the bridge as authorized, upon the faith of which the investment had been made. That the act of congress of March 3, 1871, violated this contract in three particulars: First. It withdrew the assent of congress before the bridge was finished, contrary to the terms of the resolution, and before it was or could be ascertained as a matter of fact that the bridge was a material and substantial obstruction to navigation. Second. It not merely withdrew

its assent, which was the only right it had reserved, but went much further, and made the bridge, so far as constructed, a nuisance, and declaring its completion and use illegal, and so putting the company in much worse condition than if no such assent had ever been given. This breach of contract on the part of the United States has violated the rights of the company in three particulars: First. By taking its property without due process of law. Second. By taking its property for public use without just compensation. Third. By making the company liable, by a deprivation of its property, as guilty of a public nuisance, by an ex post facto law.

Warner N. Bateman, Dist. Atty, argued: First. That if, as claimed by the plaintiffs' counsel, the operation and effect of the law of 1871 was to deprive plaintiffs of their property without due process of law; to take it without compensation, and to make plaintiffs' proceeding unlawful by an ex post facto law, the act was void, as a plain infraction of three distinct provisions of the federal constitution. It imposed no obligation upon plaintiffs, and their changes of their bridge according to its requirements was wholly a voluntary act. Second. The states of Ohio and Kentucky hold the title to the bed of the river and the entire jurisdiction over it, subject only to the power of congress to regulate commerce upon it, and the bridge company derives its franchise to build and maintain their bridge from them, and the title to their whole property from them and private citizens; it derives nothing from the United States. Third. That authority to regulate commerce is vested in congress, is a mere legislative power derived from the constitution, to be exercised wholly in its discretion as to the terms and occasions of doing so, and cannot be made the subject of contract of any description; but the power of alteration and repeal is as absolute as that of enactment; and that therefore congress neither can make, nor has it in the act of 1869 made, any contract with the company in restraint of this unconditional right of amendment or repeal which is implied in the act itself as a part of its conditions. Fourth. That included in this authority to regulate commerce is the power and duty to protect the public right to the commercial use of navigable rivers; to remove all obstruction, and to determine what shall constitute an obstruction; that this is a police power to be exercised whenever in the judgment of congress the protection of navigation demands. Fifth. That whether the plaintiffs' bridge, on the plan it was being built, was or was not an obstruction to navigation, so far as it was a fact to be considered by congress, was a legislative and not a judicial question, and the decision of congress was final. Sixth. That congress could order the removal of plaintiffs' bridge, or a modification thereof, without making the government liable for compensation.

Upon the conclusion of the argument, Justice SWAYNE, presiding, rendered substantially the following decision:

It is important to avoid delay in this case, inasmuch as the act requires that in any event it should go to the supreme court, and that he would, therefore, dispose of it according to his impressions as they now exist.

He recognized the importance of the consideration that, inasmuch as the case had to go to the supreme court, it was desirable to make such disposition of the demurrers as would avoid the delay and expense of going there, possibly, twice, and it had controlled him, in part, in the conclusions he had reached. The special demurrer covers that portion of the damages alleged arising out of the claim of Smith & Co. The bill alleges that the plaintiffs contracted with Smith & Co. for the stone-work of the bridge upon the plans of building allowed by the act of 1869, and that in consequence of the change in the plan required by the act of 1871, Smith & Co. claim damages to the amount of over $200,000 of the plaintiffs for a breach of contract as to the kind of work provided for, resulting from the change in the plan of bridge; and the bill claims that these damages, if allowed to Smith & Co., should be paid by the United States as a part of the reasonable necessary costs of the change. He said as to the question presented he had no doubt. Upon no rule of damages in like cases could it be allowed. Upon breach of contract for sale of property, the party claiming it is entitled to the profit of it, to be ascertained by the difference between market value and contract price. But he had never heard of a case in which it had been held that he was entitled also to recover either profits or losses arising out of contracts made upon the faith of the contract broken. But he said the rule of damage is fixed in the law, and limited to the actual and necessary cost and expenditure to be incurred in making the change required. His mind was clear that the damage claimed could not be allowed, and would therefore sustain the special demurrer thereto. Proceeding to consider the general demurrer, he said that the power to regulate commerce was vested by the constitution in congress, and that they were the sole judges as to mode and occasion of its exercise, and that no judicial determination was necessary in any case of such exercise to enable congress to act. The power of congress was a perpetual one, derived from the constitution, and could be exercised as often as congress might in its discretion do so, and that it could both enact and repeal without condition.

There was another proposition that was likewise clear, that congress, in the exercise of this power, had the right to order the removal of all obstructions to the navigation of the river, and to determine what should constitute such an obstruction. As was said by the court in Gilman v. Philadelphia, 3 Wall. [70 U. S. 713]: "Congress may interpose by

general or special laws whenever it shall be deemed necessary. It may regulate all bridges over navigable waters, remove offending bridges and punish those who may hereafter erect them. Within the sphere of their authority. both the legislative and judicial powers of the nation are supreme." He had no doubt of its power to order the removal of any bridge across a navigable stream, and the legislation in this case was constitutionally competent. Whether it was wise or just, it was for congress to determine. The courts could not revise their judgment in that respect. As to the liability of the government to pay damages for the removal of property, congress might order to be abated as a nuisance. He knew of no case in which it had been allowed, nor did he, indeed, remember any case in which such liability had been claimed. So far as he knew, when the supreme court ordered the removal of the Wheeling bridge as an obstruction to navigation, no one even suggested that the plaintiff or the government, whose law required it, were liable for damages; and in the case of Gilman v. Philadelphia [supra], such liability was not considered or mentioned. There was no doubt that congress could order the removal of obstructions which it declared to be nuisances without any legal obligations on the part of the government to make compensation. If this was such a case merely, he would have no hesitation in sustaining the demurrer.

But this case presents a feature that is novel, and of first impression. Before building their bridge, plaintiff applied to congress for instruction as to the mode in which it should be done. In the joint resolution of 1869, this mode was prescribed, and upon the faith of that act the plaintiff proceeded to erect its bridge according to its terms. So far as it appears it acted in good faith. Before having completed their bridge, however, congress passed the act of 1871, by which it prohibited the completion of the bridge upon the plan it had before authorized. It would be unsafe for any company to proceed to erect a bridge across a navigable stream, without first making an application to congress for directions as to its plan, and he believed that such had been, and was now, the uniform practice.

It is claimed on behalf of the plaintiffs' counsel, with great plausibility, that the act of 1869 constitutes a contract between the bridge company and the United States, by which the bridge company should be entitled to complete and maintain its bridge upon the plan permitted by that act, until experience shall have shown that the bridge was a substantial obstruction to the navigation of the river. It is insisted, on the other hand, with great force, by the counsel for the government, that congress retained, as a necessary incident of its legislative power, the right of unconditional repeal at its discretion, and that this right is implied in every exercise of this power, including the act in question, and passed as a necessary condition with it,

and that it could not qualify or restrain its right in that respect by any contract. Upon these two propositions a great array of authorities and an exhaustive discussion has been presented. My own impressions are against the claim of the plaintiff in this respect; but they may be perhaps altered upon a fuller representation of the case upon its merits, as shown in final trial. The question is one upon which eminent counsel might form opposite opinions. In view of this doubt, and the possibility that the other members of the supreme court might disagree with me, and that I might, indeed, change my own views, I think it is a better administration of justice in the case to permit the case to proceed, and have the question presented to the supreme court fully upon the whole merits of the case. I shall, therefore, overrule the general demurrer, and give leave to answer.

[On appeal to the supreme court. the decree of this court was affirmed; Justices BRADLEY, FIELD, and MILLER dissenting. 105 U. S. 470.]